CáRUTHERS, J.,
delivered the opinion of the Court.
This is a charge for gaming of rather a singular character : though very plain in its principle, it is novel in its facts. The charge is that in June, 1857, at Smith’s Spring, in the county of Williamson, certain 'evil-disposed unknown persons made a bet of fifty dollars on a cockfight, and issued handbills giving the public notice of the same, and that a large crowd did attend, and among others the defendant, who paid the fixed price of one dollar for the privilege of entering the pit and witnessing the sport, and thereby encouraged and promoted the said gaming and match of hazard and address. The indictment is in due form, and in substance charges that the defendant is guilty of the offence of gaming, because by entering the pit, and by his presence and the payment of the fee of one dollar, he did “encourage and promote” gaming, although he may not have actually made or been concerned in any bet, or otherwise participated in the unlawful match of hazard.
The indictment was met * by a demurrer, which was overruled by the Court, and the defendant fined for his offence.
*621 Was the defendant guilty of an indictable offence? is the question. Is the act of cock-fighting for money, or other valuable thing, gaming? There can he no doubt of this. The definition in the act of 1799, ch. 8, § 2, clearly embraces it. By that act, “any game or match of hazard or address for money or other valuable thing” is gaming. Walker vs. The State, 2 Swan, 290. By the same act, all who “encourage or promote” any game, etc., are involved in the same guilt with the actors or betters. Such would be the effect of the common law principle, that all who advise, encourage, or promote the commission of a misdemeanor are guilty as principals, independent of the statute.
How could any one more effectually promote and encourage a game or match of this kind than by not only giving it countenance by his presence, but actually paying his money to support and sustain it? The preparations are made by the principal offenders; notice is given of the time and place; the public are called upon to attend and pay money for the privilege of participating in the enjoyment of the sport; and the defendant accepts the invitation, and contributes his money to the extent of the fee demanded. Is he not actively and efficiently aiding, abetting, and encouraging the unlawful thing?
All men should keep at a distance from such degrading practices. Gambling is punished by law more on the ground of public policy, on account of its effects upon the actors and society, than the intrinsic wickedness of the thing itself. It is prohibited by law and visited with penalties because of its destructive effects upon the moral character and social habits of individuals. It leads to idleness, dissipation, bankruptcy, and wretchedness. Its *622 victims are almost invariably converted into cold, selfish, reckless harpies.
If one species of this vice could be more low, grovelling, and despicable than another, it would seem to be that under consideration. It adds barbarity and cruelty to the other attributes of ordinary gaming. The age has passed when it could be tolerated as a sport, much less as a mode of gambling. Gaming is a seductive vice, and well calculated to entrap the young and inexperienced, and lead them to ruin and disgrace. It holds out the prospect of making money otherwise than by the “sweat of the brow,” (some honest calling,) and of getting something for nothing. Like intemperance, it grows upon those who engage in it; and the advance from the point of respectability, if there be any such point, where gentlemen play for amusement, or only bet a little to keep the game and make it interesting, to the point of infamy and degradation where the cognomen of “blackleg” is given, is gradual and almost imperceptible.
The policy of the State is to save her citizens from this depth of infamy, and society from contamination, by arresting the evil in its incipient stages, and rebuking all who encourage it.
In some parts of the community it has been found that these professional gamblers have commanded strength enough to obtain office and reach places of trust and confidence. This consequence could only result from the countenance and support extended to them by men of character and influence. They should have no encouragement or support, and for that reason the law punishes all who sustain, promote, and aid the practice. This is the predicament of the defendant,- and in that consists his *623 guilt. He did not do tbe unlawful thing himself, but countenanced, aided, and encouraged those who did by his presence and the contribution of his money.
We therefore affirm the judgment.